UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVE BAUS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY; THE HARDIN AGENCY, LLC; and NAVLAN PR LLC, a/k/a INBOUNDCD a/k/a CONSUMER INSURANCE ASSOCIATION,<br><br>Defendants. | NO.<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227; WASHINGTON TELEPHONE SOLICITATION ACT, RCW 80.36.390; AND WASHINGTON AUTOMATIC DIALING & ANNOUNCING DEVICE ACT, RCW 80.36.400<br><br>JURY TRIAL DEMANDED |

## I. INTRODUCTION

1. This action arises out of the relentless telemarketing practices of Defendants Allstate Insurance Company ("Allstate"), The Hardin Agency, LLC ("Hardin Agency"), and Navlan PR, LLC a/k/a InboundCD a/k/a Consumer Insurance Association ("InboundCD") (collectively "Defendants"), that violate the Telephone Consumer Protection Act's ("TCPA") prohibition against initiating telephone calls to residential telephone lines using artificial or prerecorded voices to deliver messages without the prior express consent of the called party. 47 U.S.C. § 227(b)(2)(B); 47 C.F.R. § 64.1200(a)(3).



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

2. Defendants' calls also violated Washington's Telephone Solicitation Act, RCW 80.36.390, and Washington's prohibition on automatic dialing and announcing devices, RCW 80.36.400.

3. Between November 9 and November 16, 2022, Plaintiff Steve Baus ("Plaintiff" or "Mr. Baus"), received numerous telephone solicitations to his residential telephone number from Defendants soliciting Mr. Baus to switch to Allstate insurance for his auto insurance.

4. Mr. Baus never had any business with Defendants, and he never provided his prior express written consent to receive any phone calls from Defendants.

5. Accordingly, Mr. Baus brings this action on behalf of himself and Class members to obtain equitable and legal remedies available under the law for his injuries and to enforce consumers' rights to be free from annoying and harassing telephone solicitations that he and Class members do not want.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA. *Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368 (2012). This Court has supplemental jurisdiction over the state law claims because they share a common nucleus of operative fact with the TCPA claim. *See* 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Defendants because this lawsuit arises from Defendants, in person or through agents, transacting business within this state, committing tortious acts within this state, and owning phone numbers with area codes within this state that were used during the phone calls to Plaintiff that are the subject of this lawsuit. In addition, Defendants targeted a resident of this state by calling a telephone number with a known Washington area code.

8. Venue is proper in this District because a substantial part of the acts and omissions giving rise to the action occurred in this District.



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

## III. PARTIES

9. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Woodinville, Washington.

10. Allstate is incorporated in Delaware with its principal place of business in Illinois.

11. Hardin Agency is a Washington limited liability company with its principal place of business in Washington.

12. InboundCD is a Puerto Rico limited liability company with its principal place of business in Puerto Rico and/or California.

## IV. TCPA BACKGROUND

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

**Prohibition of Prerecorded or Artificial Voice Calls**

14. Section 227(b) of the TCPA prohibits making ***any*** call (other than a call made for emergency purposes or one that is exempted by rule or order under paragraph 2(B)) to a residential telephone line using an artificial or prerecorded voice without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(B).

15. A violation of section 227(b) carries statutory damages of $500 to $1,500 per call. *See* 47 U.S.C. § 227(b)(3)(B) and (C).

**Vicarious Liability**

16. A person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g.*, *In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

"rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶ 28 (2013).

17. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories, including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

## V. WASHINGTON LAW BACKGROUND

18. Washington law imposes numerous restrictions on telephone solicitations, including requiring that a telephone solicitor must identify itself, the company on whose behalf it is calling, and the purpose of the call within the first 30 seconds. RCW 80.36.390(3) (RCW 80.36.390(2) in prior version of the statute effective from June 9, 2022 to July 22, 2023). A solicitor told not to call again may not call that number for at least one year. RCW 80.36.390(7) (RCW 80.36.390(6)(c) in prior version of the statute effective from June 9, 2022 to July 22, 2023). A person aggrieved by repeated violations may recover at least $1,000 per violation, plus reasonable attorneys' fees and costs. RCW 80.36.390(13). The prior version of the statute, effective between June 9, 2022 and July 22, 2023, provides that a person aggrieved by repeated violations of this section may bring a civil action to enjoin future violations and to recover damages or at least one hundred dollars for each violation. RCW 80.36.390(10) (June 9, 2022)

19. Washington also prohibits using an automatic dialing and announcing device ("ADAD"), defined at the time of the alleged telephone calls and all relevant times as a system



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

that "automatically dials telephone numbers and transmits a recorded or artificial voice message once a connection is made," for commercial solicitation of Washington telephone customers. RCW 80.36.400(1)(b), (2). A violation of ADAD is a per se violation of the Washington Consumer Protection Act ("CPA"), and at the time of the alleged telephone calls to Plaintiff, RCW 80.36.400(3) established a statutory presumption that the "recipient of commercial solicitations made using an ADAD are five hundred dollars." RCW 80.36.400 (June 9, 2022) .

## VI. FACTUAL ALLEGATIONS

20. At times relevant to this action, Mr. Baus' residential telephone number ending in 7625 was his home telephone number.

21. In November of 2022, Mr. Baus began receiving unwanted telephone solicitations made by or on behalf of Defendants to his telephone number ending in 7625 that used artificial or prerecorded voices to deliver a telemarketing message.

22. Plaintiff received telephone calls soliciting him to switch his auto insurance carrier on November 9, 2022.

23. The November 9, 2022, call was identified on Plaintiff's caller ID as being from (206) 848-9555. The caller opened with the pitch that they could save Plaintiff up to $450 on his auto insurance. When Plaintiff inquired who was calling, the voice responded, "this is Lisa with Consumer Insurance Association. We work with major providers like Allstate, State Farm, and Farmers."

24. Plaintiff answered the questions posed by the ai voice telemarketer in order to learn the identity of the insurance agent on whose behalf the call was placed.

25. Plaintiff knew that the voice was artificial because of the unnatural gaps in the conversation, non sequitur statements from the voice saying "thank you for holding," or "hello?," the voice beginning a sentence before the prior sentence was even finished in an impossible way,



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

and repeating the same question over and over with the exact same tone and inflection when the system failed to understand Plaintiff's clearly articulated answers.

26. The calling technology began to glitch at the end of the call, and it disconnected without being transferred. However, the last thing the ai voice agent said was "Thank you for holding, but the agent seems to be busy at the moment. I have their information and their name is Allstate."

27. The caller did not identify Navlan PR LLC, nor Allstate, nor the Hardin Agency within the first 30 seconds of the call. It identified itself as "Consumer Insurance Association" only when asked, and named Allstate only at the end of the call.

28. A little bit later that day, Plaintiff received a call back from "Glenn" who worked for the Hardin Agency to go over the auto quote with Plaintiff. Glenn informed Plaintiff that the transfer to him failed because Glenn was on the phone with someone else.

29. Plaintiff informed Glenn that the phone call he received was a "prerecorded ai call." Plaintiff then asked if Glenn was aware that those calls violated the TCPA. Plaintiff demanded that the lead generation company who initiated the telephone call contact him.

30. On November 10, 2022, Plaintiff received another call to his home telephone from "Consumer Insurance Association," from the caller ID (206) 848-8752, making the same claim to save him up to $450 on his auto insurance and asking the same questions about Plaintiff and his car insurance. The call failed to transfer like the call Plaintiff received the day before. The ai voice agent ended the call with the same statement, "Thank you for holding, but the agent seems to be busy at the moment. I have their information and their name is Allstate."

31. On November 14, 2022, Plaintiff received an ai voice call from caller ID (866) 322-0804 claiming to be able to save Plaintiff up to $450 on his auto insurance and asking the same questions about Plaintiff and his auto insurance. The call failed and disconnected shortly into the script.



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

32. Later that day, Plaintiff received another ai voice call to save him up to $450 on his auto insurance, and asking the same questions about Plaintiff and his auto insurance. Like prior calls, the call failed to transfer. The ai voice agent ended the call with the same statement, "Thank you for holding, but the agent seems to be busy at the moment. I have their information and their name is Allstate."

33. None of the November 10 or 14 calls identified Allstate or the Hardin Agency within the first 30 seconds.

34. All three of these calls came after Plaintiff told the Hardin Agency on November 9, 2022, not to call him again.

35. On November 15, 2022, Plaintiff emailed Karinna Doyle of the Hardin Agency and Allstate Customer Resolution West at AllstateCustomerResolutionWest@allstate.com, advising them that a company identifying itself as "Consumer Insurance" had placed unwanted artificial or prerecorded telephone calls to his home telephone line on November 9, 10, and 14. Plaintiff informed them that the calls violated his rights under the TCPA, requested contact information for the caller, and demanded that Allstate place Plaintiff on its internal do not call list.

36. On November 16, 2022, Justin Hardin of the Hardin Agency sent an email to "Mike Walker" and "Mason" at InboundCD, cc'ing Plaintiff. In the email, Hardin wrote:

> We received a concerning email regarding potential TCPA violations (see below). I'm looping you in so you can help provide Steve with peace of mind on finding a good contact within InboundCD to help him with his concerns and answer any questions.

37. InboundCD did not respond to this email.

38. On November 22, 2022, in response to a follow up email from Plaintiff, Hardin wrote back to Plaintiff:

> The company we use is InboundCompliantDialing.com. You may contact their attorney Ian Ballon of Greenberg Traurig, ballon@gtlaw.com. All future communications regarding this matter should be directly with them.



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

39. Plaintiff reached out to Ballon and Ballon responded to Plaintiff by acknowledging that InboundCD placed calls to Plaintiff, but denied that the calls were placed using prerecorded or artificial voice to deliver a message.

40. At no point in time did Mr. Baus ever give prior express consent to be called by any of the Defendants prior to the calls he received.

## VII. CLASS ACTION ALLEGATIONS

41. Mr. Baus brings this action under Fed. R. Civ. P. 23 on behalf of the following Class:

> All persons within the United States to whose residential telephone number Defendants placed, or had placed on their behalf, one or more calls using an artificial or prerecorded voice for the same purpose that Plaintiff was called from four years prior to the filing of the Complaint through class certification.

42. Mr. Baus also brings this action on behalf of the following Washington Subclass:

> All persons within the State of Washington to whose telephone number Defendants placed, or had placed on their behalf, one or more calls using an artificial or prerecorded voice for the same purpose that Plaintiff was called from four years prior to the filing of the Complaint through class certification.

43. Excluded from the Class are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; and any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families.

44. The Class members for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

45. The exact number and identities of the persons who fit within the Class are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

a. The time period(s) during which Defendants made calls;
b. The telephone numbers to which Defendants called;
c. The telephone numbers for which Defendants had prior express written consent;



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

d. The purposes of such calls; and

e. The names and addresses of Class members.

46. The Class contains hundreds, if not thousands, of individuals.

47. There are common questions of law and fact affecting the rights of the Class members, including, *inter alia*, the following:

a. Whether Defendants (or someone acting on their behalf) makes telemarketing calls to Plaintiff and Class members;

b. Whether Defendants' calls violated RCW 80.36.390 and RCW 80.36.400;

c. Whether Defendants' statutory violations were willful and knowing; and

d. Whether Defendants should be enjoined from engaging in such conduct in the future.

48. Plaintiff's claims are typical of the claims of the Class members in that they arise from Defendants' uniform conduct and are based on the same legal theories as these claims.

49. Plaintiff and Class members have also suffered concrete harm in addition to statutory damages, because all Class members spent time tending to Defendants' unwanted calls and suffered a nuisance and an invasion of their privacy.

50. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

51. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

52. Defendants have acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

53. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

54. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

55. Common questions will predominate, and there will be no unusual manageability issues.

## VIII. CAUSES OF ACTION

### COUNT I
### Violations of 47 U.S.C. § 227(b)
### (Against all Defendants and on behalf of Plaintiff and the Class)

56. Mr. Baus and the Class incorporate the foregoing allegations as if fully set forth herein.

57. Defendants made, or had made on their behalf, telephone calls using artificial or prerecorded voices to residential telephone numbers of Plaintiff and the Class members.

58. By using artificial or prerecorded voices, as opposed to live agents, Defendants were able to place hundreds or thousands of calls at a time, and connect the ai voice agent to telephone lines where the system detected a connection, enabling Defendants to achieve extraordinary outreach at essentially zero marginal cost.

59. The same technology was used to place the artificial/prerecorded voice calls, whether or not any human being called answered the telephone and listened to an artificial or prerecorded voice over the telephone.

60. Plaintiff and the Class members were called by Defendants on their residential telephone lines.

61. Plaintiff and Class members are entitled to an award of $500 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3).

62. Plaintiff and Class members are entitled to an award of treble damages in an amount up to $1,500 for each violation made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3)



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

**COUNT II**
**Violations of RCW 80.36.390**
**(Against all Defendants, on behalf of Plaintiff and the Washington Subclass)**

63. Mr. Baus and the Washington Subclass incorporate the foregoing allegations as if fully set forth herein.

64. Defendants' calls were telephone solicitations.

65. Defendants did not identify the company on whose behalf the calls were made within the first 30 seconds.

66. Defendants called Plaintiff and Washington Subclass members repeated times after he asked not to be called again.

67. Plaintiff and the Washington Subclass members were aggrieved by repeated violations and are entitled to injunctive relief, presumed, statutory, and actual damages, and reasonable attorneys' fees and costs.

**COUNT III**
**Violations of RCW 80.36.400**
**(Against all Defendants, on behalf of Plaintiff and the Washington Subclass)**

68. Mr. Baus and the Washington Subclass incorporate the foregoing allegations as if fully set forth herein.

69. Defendants used, or had used on their behalf, an ADAD to make commercial solicitations to the Washington telephone numbers of Plaintiff and the Washington Subclass members.

70. The system that Defendants used to place the telephone calls automatically dialed Plaintiff's and Subclass Members' numbers and played recorded audio segments once a connection was made, which is why the same phrases repeated with the exact same tone and inflection

71. InboundCD made the calls as the agent of Allstate and the Hardin Agency, which accepted the leads the calls generated and ratified the calls.



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

72. Plaintiff and the Washington Subclass members were aggrieved and injured as a result of Defendants' violations of the ADAD and are entitled to an injunction, as well as presumed, statutory, and actual damages, and punitive damages.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as the representatives of the Classes and appointing the undersigned counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages, presumed damages, actual damages, and punitive damages;

E. An award of reasonable attorneys' fees and costs;

F. Such other and further relief that the Court deems reasonable and just.

## X. JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015

DATED November 9, 2026

Respectfully submitted,

NORTHWEST DEBT RESOLUTION, LLC

/s/ Peter Schneider

Peter Schneider, WSBA# 43131
10900 NE 4th Street, Ste. 2300
Bellevue, WA 98004
Tel: 971-800-6000
Fax: 206-800-6015
*Peter@nwdebtresolution.com*

Max S. Morgan, Esquire*
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
*max.morgan@theweitzfirm.com*

Thomas A. Zimmerman, Jr.*
*tom@attorneyzim.com*
Jeffrey D. Blake*
*jeff@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
7199 South Kingery Highway # 1148
Willowbrook, IL 60527
Tel: (312) 440-0020
Fax: (312) 440-4180
*www.attorneyzim.com*

*applications for pro hac vice admission forthcoming

*Attorneys for Plaintiff and the Proposed Classes*



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 971-800-6000
FX: 206-800-6015